# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    -v-                        Case No. 1:21-cr-000023 (TJK)

JOSHUA PRUITT,
           Defendant.

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS COUNT 2:
## <u>OBSTRUCTION OF AN OFFICIAL PROCEEDING</u>

Comes now, the Defendant JOSHUA PRUITT, by and through his counsel, and tenders this memorandum in support of his motion to dismiss the indictment as to Count 2 as defective because, as a matter of law, the ElectoralCollege Vote Certification was not an "official proceeding" within the meaning of the statute. As such, the Government has failed to state an essential element of the charge and it must be dismissed.

## I. INTRODUCTION

The Government's indictment is defective with regard to 18 U.S.C. § 1512(c)(2) because it fails to state an essential element of the offense. 1512(c)(2) requires Mr. Pruitt to have"other wise obstruct[ed], influence[ed], or impede[ed] any official proceeding." The Congressional vote to confirm President Joe Biden's electoral victory does not constitute an"official proceeding" under the statutory language of 18 U.S.C. §§ 1515(a)(1) and 1512(c)(2). Therefore the 1512(c)(2) count against Mr. Pruitt must be dismissed.

For purposes of defining "official proceeding" in 18 U.S.C. § 1512, "proceeding" has been defined in various ways, ranging from the broad to the specific. Consulting both lay and legal dictionaries suggests that "proceeding" may be used either in a general sense to mean the carrying on of an action or series of actions, or more specifically as a legal term of art to mean a

legal action or process; any act done by authority of a court of law; a step taken by either party

in a legal case. *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013), as amended (Aug.

28,2013) "'Proceeding' in the legal context has also been defined as a word much used to

express the business done in courts" and "is an act done by the authority or direction of the court,

express or implied." Edwin E. Bryant, The Law of Pleading Under the Codes of Civil Procedure,

3-4 (2d. 1899).  These definitions alone indicate proceeding has a narrower definition than

may readily appear. Further, the surrounding statutory language, legislative scheme, and rule of

lenity all further clarify an "official proceeding" under 1512 requires a quasi-judicial function,

which is lacking from the Congressional vote to confirm President Joe Biden.

Accordingly, the indictment is defective for failing to state an offense and the charge must

be dismissed. Fed. R. Crim. P. 12(b)(3)(B)(v).

## II. RELEVANT FACTS

On December 14, 2020, the electors from each state in the Electoral College voted and

elected Joseph R. Biden as the next president of the United States. On January 6, 2021, a joint

session of Congress was held with Vice President Mike Pence to certify the count of the election

and announce President-elect Biden as the next President.

This certification process requires that the president of the Senate, Vice President Mike

Pence, presides over the session. Vice President Pence duties were to open and present the

electoral vote certificates from each state and Washington, D.C., in alphabetical order. The

certificates are to be read aloud by "tellers," members of the U.S. House of Representatives and

Senate appointed to the roles. The vice president then asks if any members of Congress wish to

object to any of the votes.  The Electoral Count Act of 1887 allows members of Congress to

object to a state's electrical vote.  Objections must be written and signed by at least one member

of the House and one senator, then submitted after the state's vote is read. The two chambers then meet separately and debate for up to two hours before deciding whether to continue voting given the objection. The objection fails unless both chambers vote by a simple majority to concur with the objection. After all the votes are read, the tellers record and count them. The vice president then declares an    official winner once one presidential    ticket reaches 270 votes.

On the same day as this routine institutional action, President Trump held a "Stop the Steal" Rally on the National Mall, drawing thousands of his supporters from all over the countr yto protest the certification of the election.

## III. LEGAL STANDARD

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," including for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "[A] pretrial motion to dismiss an indictment allows a district court to review the sufficiency of the government's pleadings, but it is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 154 (D.D.C. 2015) (citation and internal quotation marks omitted). "In ruling on a motion to dismis for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphasis added).

> [A]n indictment is sufficient if it, first, contains the elements of theoffense charged and fairly informs a defendant of the charge againstwhich he must defend, and, second, enables him to plead anacquitt al or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct.2887, 41 L . Ed. 2d  590 (1974). The notice requirement "is established in the Sixth Amendment, which provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause

of the accusation[.]'" *United States v. Hillie*, 227 F. Supp. 3d 57, 69 (D.D.C. 2017) (quoting U.S. Const. Amend. VI). "A valid indictment also preserves the FifthAmendment's protections against abusive criminal charging practices; specifically, its guarantees thata criminal defendant can only be prosecuted for offenses that agrand j ury has actually passed up on, and that a defendant who isconvicted of a crime so charged cannot be prosecuted again for that same offense.

> *Id.*

An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged. *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged, if any part or element is missing, the indictment is defective and must be dismissed. *See Hillie*, 227 F. Supp. 3d at 70.

## IV. The Government Has Failed to Charge an Essential Element of the Offense.

To satisfy the constitutional requirements for an indictment the indictment, when viewed as a whole, must contain all the essential elements of the offense charged. *Bowdin*, 770 F. Supp.2d at 146. Obstruction of an Official Proceeding, under 18 U.S.C. § 1512 (c)(2), requires that Mr. Pruitt "corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so." An "official proceeding" in this section is defined in § 1515 (a)(1) as:

> a. a proceeding before a judge or court of the United States, a United Statesmagistrate judge, a bankruptcy judge, a judge of the United States TaxCourt, a special trial judge of the Tax Court, a judge of the United StatesCourt of Federal Claims, or a Federal grand jury;
> b. a proceeding before the Congress;
> c. a proceeding before a Federal Government agency which is authorized by law; or
> d. a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce." *Id.*

Thus, the essential elements require some corrupt intent, an action that "obstructs, influences, or impedes" and "an official proceeding." While Mr. Pruitt continues to dispute the fact that he had the corrupt intent to obstruct anything, a pretrial motion to dismiss is not the proper forum for these arguments and it will not be made here. Rather, Mr. Pruitt contends that, as a matter of law, the certification of the Electoral College vote on January 6, 2021 was not an "official proceeding" within the meaning of the statute because it did not have a "quasi-judicial function." As a result, the Government has failed to charge an essential element of obstruction of an "official proceeding" and this charge must be dismissed.

### A. An "Official Proceeding" Requires a Quasi-Judicial Function

#### 1. The Surrounding Statutory Language Indicates Congress's Intent for 1512(c)(2) To Be Interpreted Narrowly

The statutory language and history indicate that the statute does not apply to the January 6 certification of election results. The title of § 1512 is "Tampering with a witness, victim, or an informant." It was enacted as part of the Victim and Witness Protection Act of 1982. As explained in the Justice Manual, § 1512 "proscribes conduct intended to illegitimately affect the *presentation of evidence* in Federal proceedings or the communication of information to Federal law enforcement officers" and applies to *tampering with witnesses* in "proceedings before Congress, executive departments, and administrative agencies, and to civil and criminal judicial proceedings, including grand jury proceedings."[1] The title of § 1512, and placement in the statutory scheme, indicate that it was intended solely and exclusively to punish and deter those who would interfere with quasi-judicial investigatory proceedings. Accordingly, § 1512 may apply where a person intimidates a witness called to testify during a congressional investigation

or an impeachment. However, §1512 plainly does not apply when Congress is merely engaging in a routine, ministerial function, such as certification of a presidential vote.

Regarding the language of § 1512(c)(2), "proceeding" is limited by the prefatory phrase"official," which narrows the scope of application to quasi-judicial functions. For purposes of defining "proceeding" in § 1515, use of the preposition "official" before in connection with the term Federal Government agency, Congress, or the Courts implies that an "official proceeding"involves some formal convocation in which parties are directed to appear, instead o f any informalinvestigation or nonjudicial conduct by a governmental body conducted by any member of theagency. *See Ermoian*, 727 F.3d at 895.

The Fifth Circuit acknowledged the definition of "official proceeding" must be defined narrowly based on its definition found in § 1515(a)(1)(c). *United States v. Ramos*, 537 F.3d 439, 46263 (5th Cir. 2008); U*nited States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006). The Court recognized, as other circuits confirmed, that the definition of "official proceeding" is presented in a circular manner requiring the court to examine the surrounding language of the statute to determine Congress's intent. *Id.*; *see Proceeding*, Black's Law Dictionary, 1241 (8th e d.2004) (defining proceeding in relevant part as "3. An act or step that is part of a larger action" and "4. The business conducted by a court or other official body; a hearing," and also citingapp rovingly an understanding of "proceeding" as "much used to express the business done in courts").

The Ninth Circuit properly identified that difficulty arises from the fact that "proceeding" has both a general, lay meaning, and a technical meaning, thereby requiring the court to lookbeyond dictionary definitions at the words and surrounding phrases of the statute to determine the meaning of the term. *Id*. The full term used in § 1512 is "official

proceeding." *See* § 1515.Congress's deliberate use of the prefix "official" indicates a Congressional intent to apply the narrower legal definition to the term "proceeding" rather than the more expansive, lay person's definition.

*Ermoian*, 752 F.3d at 1170. Further, the term "official proceeding," and the clause it is contained in, is surrounded with other terms contemplating legal usage such as "judge and court," "Federal grand jury," "Congress," "Federal Government agency," and the clarification that the type of proceeding at issue is those that "is authorized by law." *Id*. These factors weighed together by the Court heavily indicated Congress' intent was for "official proceeding" to be defined narrowly and not be applicable to all government actions.

The Ninth Circuit defined "official proceeding" narrowly as to not include federal agencycriminal investigations. "Examining the term 'proceeding' within the grammatical struct ure ofthe definition at issue, it becomes clear that the term connotes some type of formal hearing." *Id*.

Further, the Fifth Circuit explained when addressing this same definition, of "official procceeding"the preparatory qualifiers and surrounding formal legal language implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency. *Ramos*, 537 F.3d at 462-63. This indicates that the "official proceeding" element of § 1512 is limited in its application to government actions with a quasi-judicial character. The electoral college vote confirmation wholly lacks these quasi-judicial characteristics.

The Second Circuit has also assigned a narrow definition to "official proceeding" when examining § 1512(c)(1) finding the work of senior officials charged with "quasi-adjudicative"responsibilities would fit the definition of "official proceeding."

*United States v. Perez*, 575 F.3D 164, 169 (2d Cir. 2009).  This precedent again reinforces that in determining if a government action constitutes an "official proceeding" to which § 1512(c) is meant to apply, there must be a quasi- judicial function at work, and not a mere institutional action.

The Second Circuit further clarified the requirements to qualify as an "official proceeding," holding that the disputed Use of Force Program Statement in the case was moreth an a preliminary investigation or mere institutional action. *Id.* Critically, the action at issue contained a detailed process of review of decision making, a review by a panel of senior officials, was designed to determine if a policy had been adhered to, and review the nature and findings of After-Action Reports. *Id.* Detailed process review and a quasi-judicial function were present in order to satisfy the requirements of an "official proceeding." Thus, in all the instances in which the term "official proceeding" is used in § 1512, it is in contemplation of a quasi-judicial hearing. *See Ramos*, 537 F.3d at 463.

The term "official proceeding" implies something more formal than a mere investigation or routine institutional action. The limiting term "official proceeding" prevents a statutory sprawl in which the countless communications of citizens with one agency or another of the federal government lay the groundwork for a potential obstruction prosecution. *See Marinello v. United States*, 138 S. Ct. 1101, 1109-10 (2018) (reading tax obstruction statute not to extend to "routine, day-to-day work carried out in the ordinary course by the IRS"). Rather, § 1512(c)(2) is meant to perform the narrowly focused function of and deterring individuals who seek to intimidate or eliminate government witnesses who are set to give testimony or perform other roles in judicial or quasi-judicial proceedings. The vote confirmation of President Joe Biden by Congress does not

exhibit any quasijudicial characteristics and instead falls into the category of routine institution alaction.

> **2. Accepted Canons of Statutory Interpretation Favor a Narrow Definition of "Official Proceeding" That Does Not Include the Election CertificationResults**

The term "official proceeding" in § 1515(a)(1)(C) indicates that a more formal sense of th eterm is the correct interpretation in the context of § 1512. The definition provided in Section 1515(a)(1)(C) uses the additional preposition "before" in connection with the term "FederalGovernment agency," which implies that an "official proceeding" involves some forma lconvocation of the agency in which parties are directed to appear. *Ramos*, 537 F.3d at 462-63;*Dunn*, 434 F. Supp. 2d at 1207. This paired with the preparatory word "official" qualifying"proceeding," disqualifies the lay definition of the term proceeding, and confirms that a narrower technical definition must be applied to the statutory term.

This form of statutory interpretation is well accepted by the nation's leading legal minds."Sometimes context indicates that a technical meaning applies      And when law is the s ubject, ordinary legal meaning is to be expected, which often differs from common meaning." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 73 (2012). When defining a statutory term, the court must choose to adopt a general or more technical meaning.Multiple appeals courts have already adopted the narrower more technical meaning of "officialproceeding" in this statutory scheme. *See Ermoian*, 752 F.3d at 1171.

> **3. Rule of Lenity Favors Narrow Application**

Even if the Court finds the statutory language of § 1512 ambiguous as to the breadth of the term "official proceeding" the court should still find the Congressional vote to confirm President Joe Biden was outside the scope of the statute. When interpreting § 1512, courts must

be mindful of the rule of lenity requiring courts to interpret ambiguous criminal statutes in favor of the defendant. *See United States v. Orellana,* 405 F.3d 360, 370 (5th Cir. 2005). When considering §1512(c)(2), if the court does not adopt a narrow definition of the term "official proceeding," a definition that only includes government actions with a quasi-judicial function and those acts explicitly named in the statute—then the court must apply the rule of lenity to remedy the statute's over broad and vague language.

The Fifth Circuit acknowledged the ambiguity of the term "official proceeding" in this statute, which led the court to apply the statute narrowly. *See Ramos*, 537 F.3d at 463-464. The Court held "any ambiguity leads to the same conclusion that § 1512 cannot be applied to the facts here. Such ambiguity and the absence of binding case law would require us to apply the rule of lenity." *See Orellana,* 405 F.3d at 370.

The rule of lenity in this case mandates a narrowing of the term "official proceeding" to only include government actions with a quasi-judicial character. Failure to apply the rule of lenity in this case would result in a statute which fails to give citizens reasonable notice of when they have begun to commit a serious felony carrying an up to a twenty-year prison sentence.

## B. Process of Confirming President Joe Biden's Victory Does Not Constitute a Quasi-Judicial Function

The election certification on January 6 was not an "official proceeding" within the meaning of the statute. The election certification process requires that the president of the Senate, Vice President Mike Pence, presides over the session, open, and present the electoral vote certificates from each state. The certificates are read aloud by "tellers," members of the U.S. House of Representatives and Senate appointed to the roles. The vice president then asks if any members of Congress wish to object to any of the votes. The Electoral Count Act of 1887 allows members of Congress to object to a state's electoral vote. Objections must be written and signed

by at least one member of the House and one senator, then submitted after the state's vote is read. The two chambers then meet separately and debate for up to two hours before deciding whether to continue voting given the objection. The objection fails unless both chambers vote by a simple majority to concur with the objection. After all the votes are read, the tellers record and count them. The vice-president then declares an official winner once one presidential ticket reaches 270 votes.

While the certification of the election may be an official proceeding of Congress under a layman's definition, when considering statutory construction and Court precedent, it is not an "official proceeding" within the meaning of § 1512(c)(2). It is not "quasi-adjudicative" or "hearing"-like. The certification of the election did not direct parties to appear or testify, or have characteristics like a Court, Grand Jury, or adjudicative agency hearing. The indictment, which alleges that Mr. Pruitt obstructed an "official proceeding" is therefore defective as it has notalle ged an essential element of the crime. Even if all the facts in the indictment were taken in a light most favorable to the Government, and it was shown that Mr. Pruitt in fact did or attempted to obstruct the electoral vote certification, the Government would still have not shown that Mr. Pruitt violated§1512(c)(2). Where an indictment is defective for failing to state an offense, it m ust be dismissed. *See Hillie*, 227 F. Supp. 3d at 70.

## V. The Government's Interpretation of 1512(c)(2) Renders the Greater StatutoryScheme Surrounding Obstruction of Congressional Proceedings Supe rfluous

The Government's overreach in utilizing § 1512(c)(2) to charge the defendants in theCapitol cases becomes evident when considering the larger statutory scheme at issue. Section1512(c)(2) carries a harsher penalty than neighboring sections of the law that spec ificallyenumerate criminal acts. It reads, "[w]hoever corruptly . . . otherwise obstructs,

influences, orimpedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The potential for a twenty-year prison sentence is what has drawn the Government to § 1512(c)(2)—the Government seeks to impose harsher penalties on the defendants than those that would be ordinarily available in the statutory scheme.

Any other statute criminalizing an attempt to obstruct justice not involving murder carries a lower sentence than § 1512(c)(2). The Government has failed to utilize the statutory law more plainly applicable to the charges being contemplated with the capitol riots, seemingly due to its zeal to acquire higher sentences than the law allows.

Section 1505, "Obstruction of proceedings before departments, agencies, andcommittees," provides a more properly concrete statutory definition of charges seemingly available to the government in this case. Section 1515 criminalizes acts that corruptly obstruct, or impede or endeavor to influence any pending proceeding that is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry underwhich any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress. The punishment for this crime is imprisonment of not more than five years. Such a statute is rendered superfluous by the Government's interpretation of § 1512(c)(2) despite its  more direct  application to  the case at  hand and  lack  of  ambiguous language.

Further, the Government's novel interpretation of § 1512(c)(2) is harsh, broad, ill-defined, and threatens to aggressively encroach on citizens' basic right to petition guaranteed by the First Amendment of our Constitution. *See* U.S. Const. amend. I ("Congress shall make no law abridging the right of the people to petition the Government for a redress of grievances.")

The Government's proposed application of § 1512 to any proceeding before Congress threatens to chill or burden excessively the right of persons to protest. *See United States v. Sutherland*, 921F.3d 421, 426 (4th Cir. 2019). Under the Government's proposed interpretation of the statute, a twenty-year sentence could be imposed against any protestor who block traffic on the way to the Capital or otherwise delay any Congress member from going about any official task.

## VI. CONCLUSION

For the forgoing reasons, the indictment with respect to the charges alleging obstruction of an official proceeding under 18 U.S.C. § 1512(c)(2) are defective for failing to state an offense. The Court should dismiss these charges.

I ASK FOR THIS

JOSHUA PRUITT
By Counsel


_____/s/_____
Robert L. Jenkins, Jr., Esq.
Bynum & Jenkins Law
U.S. District Court Bar No.:  CO0003
1010 Cameron Street
Alexandria, Virginia  22314
(703) 309 0899 Telephone
(703) 229 8652 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant JOSHUA PRUITT


**Certificate of Service**

I hereby certify that I caused a true and accurate copy of the foregoing to be served on all counsel of record via ECF on this May 26, 2013.


_____/s/_____
Robert L. Jenkins, Jr., Esq.
Bynum & Jenkins Law
U.S. District Court Bar No.:  CO0003
1010 Cameron Street

Alexandria, Virginia  22314
(703) 309 0899 Telephone
(703) 229 8652 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant JOSHUA PRUITT