UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

                                    1:22-cr-00023-TJK

    v.

JOSHUA PRUITT,
    Defendant.

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

Pursuant to Section 6A1.2 of the *Federal Sentencing Guidelines* the defendant, JOSHUA PRUITT, comes now and submits the following:

**I.    Objections to Presentence Report**

The defendant does not object to any fact or factor which would impact the calculation of the appropriate advisory federal sentencing guideline.

**II.    Sentencing Factors**

A sentencing court is required to consider the guidelines ranges, *see* 18 U.S.C.A 3553(a)(4)(Supp. 2004), but is permitted to tailor the sentence in light of other statutory concerns as well.  Specifically, 18 USC 3553(a) notes:

> The court shall impose a sentence **sufficient, but not greater than necessary,** to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider—
> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)    the need for the sentence imposed—
>     (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B)    to afford adequate deterrence to criminal conduct;
>     (C)    to protect the public from further crimes of the defendant; and
>     (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)    the kinds of sentences available;
> (4)    the kinds of sentence and the sentencing range established for—

> (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
>
> (B)   in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;
>
> (5)   any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
>
> (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7)   the need to provide restitution to any victims of the offense.

The Supreme Court has described the process for imposing a sentence under the advisory sentencing guidelines as follows:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance…[A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States,* 128 S.Ct. 586, 596-97 (2007)(citations and footnote omitted; *see also Kimbrough v. United States*, 128 S.Ct. 558, 569-70 (2007).

### A. Advisory Sentencing Guidelines

This Honorable Court must consider the advisory sentencing guidelines. The Supreme Court has held that when sentencing, a court must demonstrate that it "considered the parties' arguments and ha[d] a reasoned basis for exercising [its] own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). " "[A] perfunctory recitation of the defendant's arguments or the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decision making or provide an adequate basis for appellate review." *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (internal quotation marks omitted).Further, the district court must provide some individualized assessment "justifying the sentence imposed and rejection of arguments for a higher or lower sentence based on § 3553." *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010). A district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why he has rejected those arguments. *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017); *Slappy*, 872 F.3d 202, 207 (4th Cir. 2017) (internal citation and quotation marks omitted).

An individualized assessment requires "that district courts consider the defendant's non-frivolous arguments for a downward departure, impose an individualized sentence based on the characteristics of the defendant and the facts of the case, and explain the sentence chosen." *Id.* A "'sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority'" by articulating how the sentencing factors apply to the case before it. *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting *Rita*, 551 U.S. at 356).

3

**B.  § 3553(a) Sentencing Factors**

In addition to considering the advisory sentencing range recommended under the federal sentencing guidelines, and statutory restrictions this Honorable Court must also consider the sentencing factors set forth in § 3553(a).  The defendant submits an application of these factors to the case at bar leads to the conclusion that a sentence within the advisory guideline range (51-63 months) would be greater than necessary.

**1.  History and Characteristics of The Defendant**

The presentence investigative report summarizes Mr. Pruitt's background.  He is a criminal history category III.  The instant case is not Mr. Pruitt's first contact with the criminal justice system.  While this may be true a close examination of his criminal history reveals his prior offense were non-felonies and traffic offenses.  He has been convicted of the following traffic offenses: driving without brake lights, driving while under the influence of alcohol, and driving on a suspended driver's license. It appears the common thread between his encounters with law enforcement is his consumption of alcohol.

Mr. Pruitt has been arrested and convicted for three alcohol related driving offenses, namely driving while intoxicated.  His 2013 conviction for assault on a police officer was also fueled by alcohol.  As paragraph 69 of the presentence report describes, on May 4, 2013, law enforcement responded to a report of disorderly conduct.  Mr. Pruitt, who was intoxicated at the time, became involved in a verbal altercation with law enforcement who were attempting to calm Mr. Pruitt down.  The verbal exchange grew into a physical confrontation with Mr. Pruitt.  Two years later on September 15, 2015, the defendant was arrested for public intoxication in Washington, DC. *See* paragraph 81. Although this event did not result in a conviction the facts

4

supporting his arrest again reflect Mr. Pruitt troubles with alcohol.  He was arrested in a District of Columbia metro station.  Once again, law enforcement was called to the scene as a result of a report that Mr. Pruitt was acting disorderly.  Mr. Pruitt was intoxicated at the time.  Beyond his convictions for the aforementioned alcohol related driving offenses, in 2009 he again was arrested for driving under the influence.  *See* paragraph 84.  This event did not result in a conviction. According to the presentence report Mr. Pruitt has not benefited from any alcohol abuse treatment.

Alcohol is not Mr. Pruitt's sole issue when it comes to substance abuse.  As detailed in paragraph 105 of the presentence report Mr. Pruitt reports a history of substance abuse of cocaine, alcohol, marijuana, and steroids.  Notably, in 2004 he was convicted of possession of cocaine.  *See* paragraph 66.  While Mr. Pruitt reported to the presentence report writer that he does not feel he is in need of substance abuse treatment, his history clearly suggests otherwise.  *See* paragraph 108. Mr. Pruitt would benefit from substance abuse treatment.

Mr. Pruitt withdrew from high school in 1997.  See paragraph 109. He went on to obtain a General Educational Development certificate in 1998. *Id.*  As an adult Mr. Pruitt has worked primarily as a bartender and personal trainer.  At the time of his arrest in the instant offense on January 7, 2021 Mr. Pruitt was employed as a bartender in Washington, DC.  He was similarly employed at the time of the revocation of his condition of release in Tennessee.  Mr. Pruitt could benefit from vocational training.

Mr. Pruitt is currently detained.  As a result he is now unemployed.  A review of the presentence report paragraphs 113-118 demonstrate that Mr. Pruitt is financially unable to satisfy any fine in this matter.  In accordance with the terms of his plea agreement with the government Mr. Pruitt is obligated to pay $2,000.00 as restitution for the damage sustained by the United States

Capitol.  Mr. Pruitt prays that this Honorable Court take this fact into account in determining whether any fine is appropriate.

from her students and parents.

### 2.  Nature of the Offense

Mr. Pruitt acknowledges the nature of the offense.  He entered a plea of guilty and embraced the statement of offense filed in conjunction with her plea agreement with the government.  The events of January 6, 2021 were disturbing to our nation.  Mr. Pruitt understands that he unfortunately played a role in the events.  Although the government goes to great lengths to detail the extent of Mr. Pruitt's involvement the defendant prays that this Honorable Court appreciate the motivation which drove his actions.

Mr. Pruitt, like millions of Americans, became convinced that the results of the 2020 presidential elections were the results of fraud.  This belief was fueled by Congressional leaders and the President of the United States.  Mr. Pruitt's original intent on the morning of January 6, 2021 was to attend a demonstration at the United States Capitol.  It was not to participate in a violent attack on the Capitol.  Unlike others, Mr. Pruitt was unarmed.  He was not a part of any organized pre-planning to attack the Capitol.  Although he does not deny that at the time he had an affiliation with the Proud Boys, there is no direct evidence that he coordinated with that group or any other group to attack the Capitol.

On January 6, 2021 Mr. Pruitt, along with nearly 40,000 other participants, at the direction of President Donald J. Trump went to the Capitol.  This Honorable Court is all too familiar with what would soon follow.  It is noteworthy that Mr. Pruitt did not participate in the physical breach of the Capitol.  He entered the Capitol after others had caused the breach.  Once in the Capitol Mr.

6

Pruitt is not charged with assaulting anyone.  He admits that as the events unfolded Mr. Pruitt became overwhelmed by his emotions and true belief that the election results were polluted by fraud.  He regrets his actions.

### 3.  Need to Deter

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, Purposes and Functions of Sentencing, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." Id. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of

imprisonment. *See* David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes, 33 Criminology 587 (1995); see also Gabbay, supra, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders."). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48S, 50S-51S (2011).

Mr. Pruitt has been in custody now for more that 8 months.  For nearly 12 months prior to his bond revocation Mr. Pruitt's liberty was restrained during his participation in the heightened intensity program.  His release conditions included a curfew, global position monitoring, and home confinement.  The restrains on his liberty has been significant.  It provides more than adequate specific deterrence for Mr. Pruitt.  It represents the longest period of incarceration he has served. Mr. Pruitt now stands convicted of a felony federal offense.  The Court is all too familiar with the consequences of such.  It is something that he will be confronted with for the rest of his life.

Mr. Pruitt is deterred.

### 4.      Need to Avoid Unwarranted Disparities

This Honorable Court must remain mindful of the need to avoid unwarranted disparities between similarly situated defendants.  The government advocates for a sentence of 60 months. The presentence report writer recommends a sentence of 63 months.  Again, the advisory guideline range is 51-63 months.  Mr. Pruitt stands convicted of a violation of 18 U.S.C. 1512(c)(2).  In determining an appropriate sentence Mr. Pruitt urges this Honorable Court to examine and consider other sentences imposed on defendants convicted of criminal offenses connected with January 6.

Upon information and belief, the imposition of a sentence called for by the government or the probation officer would result in Mr. Pruitt receiving the longest period of incarceration of an individual convicted of a 18 U.S.C. 1512(c)(2) offense.  The longest sentence received by such an individual who entered a guilty plea is 51 months.  This sentence was imposed by the Honorable Royce Lamberth in *U.S. v. Duke Wilson*, 21-cr-00345.  It should be noted that in addition to be convicted of a violation of 18 U.S.C. 1512(c)(2), Mr. Wilson was also convicted of a 111(a) offense.  It appears as though a sentence of 60 months would represent the highest sentence imposed on any January 6 defendant who entered a guilty plea to a single criminal offense.

There is no legitimate reason to treat Mr. Pruitt significantly harsher than others who have been held accountable for their participation in the January 6 events.  Yes, Mr. Pruitt violated the law.  However, he did not physically attack any law enforcement officers.  He did not directly cause any bodily injury to any law enforcement officers.  He does not stand convicted of a conspiracy offense.  He did not possess or employ any weapons.

This Honorable Court is well aware that many of those convicted of January 6 offenses possessed weapons.  Many employed pepper and bear spray.  Some offenders used other weapons against law enforcement.  All of these actions are far more serious transgressions that those performed by Mr. Pruitt.  His punishment should be reflective of his actions and should be imposed with an understanding of the treatment of others.

**C.     Recommended Sentence**

Mr. Pruitt submits a sentence of 36 months would satisfy the legitimate goals of sentencing. Such a sentence followed by a period of supervised release would be consistent with other sentence imposed in those convicted of criminal violations arising out of the January 6 events at the Capitol.

9

### III.    Conclusion

Wherefore the defendant, **JOSHUA PRUITT**, respectfully requests that this Honorable

Court sentence to a period of home confinement.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant JOSHUA PRUITT

### CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on August 22, 2022.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant JOSHUA PRUITT